Khor Chin Lim
4048 Ingram Drive,
Janesville, WI 53546
Tel: 608-295-6084
Email:kc53546@hotmail.com
Pro Se Plaintiff

FILED

OCT - 3 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 22 · 5675

KAW

KHOR CHIN LIM,

                        Plaintiff,        Case No.

        v.

TAN CHOO LENG;                            COMPLAINT
JIN THENG CRAVEN;
GOH CHOK TONG;                            "DEMAND FOR JURY TRIAL."
GOH JIN HIAN;
TNG SOON CHYE;
TAN SEE LENG;
KOH POH KOON;
JAMES CUMMINS;


        ...AND DOES 1 THROUGH 16;

                        Defendants

Plaintiff Khor Chin Lim ("Plaintiff") alleges as follows:

NATURE OF ACTION

- 1 –
COMPLAIN

This is an action against the defendants, for fraud on Court, abuse of process, conspiracy to commit fraud on Court, abuse process and aiding and abetting fraud on Court and abuse of process, and intentional infliction of emotional distress etc.

<u>Parties:</u>

1.     Plaintiff Khor Chin Lim (hereinafter "Plaintiff") is an individual residing at 4048 Ingram Drive, Janesville WI 53546. A resident and citizen of State of Wisconsin.

2.     Defendant Jin Theng Craven (hereinafter "JT") is an individual, a citizen of Singapore. The address is 11 Waterside, Bingley, West Yorkshire, United Kingdom BD16 2SN.

3.     Defendant Koh Poh Koon (hereinafter "KPK") is a citizen of Singapore, with his address of 18 Havelock Road, #07-01, Singapore 059764.

4.     Defendant Goh Jin Hian ("hereinafter "GJH") is an individual, a citizen of Singapore. His address is 61-A, Killiney Road, Singapore 239522.

5.   Defendant Tan Choo Leng (hereinafter "TCL") is an individual, a citizen of Singapore.  The address is 12 Marina Boulevard Level 28 Marina Bay Financial Centre Tower 3, Singapore 018982.

6.   Defendant Goh Chok Tong (hereinafter "GCT") is an individual with a role at address 10 Shenton Way, MAS building Singapore 079117. GCT is a citizen of Singapore.

7.   Defendant Tng Soon Chye, (hereinafter "TSC") is a citizen of Singapore, with his address at 150 South Bridge Road, Fook Hai Building, # 02-19,  Singapore 058727.

8.     Defendant Tan See Leng (hereinafter "TSL") is a citizen of Singapore, with his address at

- 2 –
COMPLAIN

18 Havelock Road, #07-01, Singapore 059764

9.     Defendant James Cummins (hereinafter "Cummins") is a citizen of California. Cummins is an attorney called to California bar. His office address is 577 Airport Boulevard, Suite 400, Burlingame, CA 94010. He is an attorney working at Messrs Barulich, Doogoni & Suttmann.

10.     On information and belief, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law. The conspiracy, common enterprise and common course of conduct continue to the present.

11.     In the conspiracy of the defendants, it is permissible to draw "the inference of agreement from the nature of the proposals made . . .[and] from the substantial unanimity of action taken upon them by the [defendants].

12.     At all times relevant herein, and at the time of the acts, events and/or transactions complained of, each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency.

13.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1-16, inclusive, and therefore alleges and sues the Defendants by such fictitious names. Plaintiff's rights against each such fictitiously named Defendant arise from Defendant's involvement in the aiding and abetting, and conspiracy. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION

14.     This court has diversity jurisdiction over the subject matters herein as there the plaintiff is a citizen of Wisconsin, domiciled in Wisconsin and Defendants, GCT, TSL, KPK, TCL, JT, GJH, TSC are a citizens of Singapore, Cummins is citizen of California, i.e. all the defendants

are citizen of states different from the Plaintiff who is citizen of Wisconsin and Plaintiff is from different State than any of the defendants and the amount of money in controversy under 28 U.S.C. Section 1332 (a) in relation to reliefs requested herein exceeds the sum or value of $75,000.00, exclusive of interests and costs.

<u>VENUE</u>

15.    Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in the judicial district and the San Mateo County and the actions giving rise to the causes of actions happened in the County of San Mateo.

<u>DIVISIONAL ASSIGNMENT</u>

This action arose in San Mateo County.

DIVISION

Local rule 3.2:

Except as provided in Civil L.R. 3-2(c), all civil actions that arise in the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division pursuant to Civil L.R. 3-2(c).

Thus, the proper divisions are San Francisco and Oakland.

<u>SUPPLEMENTAL JURISDICTION</u>

16.    Additional claims, if any, arising under state law also concurrently may be adjudicated in federal district court if they are so interrelated or derived from a same nucleus of operative fact. California law is applicable as, among others, the tortious acts arose and happened in California.

<u>COMMON ALLEGATIONS</u>

17.  On or about 8/4/2021, plaintiff filed an action at the Superior Court of California, San Mateo County, Case No.: 21-civ-04197, (hereinafter "2021 case") claiming against Allison who was who is a co-executrix, among others, for breaches of fiduciary duties, accounting and the co-defendant CK for conspiracy etc.. Defendant Cummins, was among the attorneys representing

- 4 –
COMPLAIN

Allison and CK, the defendant in the 2021 case. The cause of actions pleaded in the 2021 case are as follows: breach of fiduciary duty, deceit, conspiracy, assisting in breach of fiduciary duty, conversion and unjust enrichment. The relief requested are as follows:

1. Formal accounting by Allison;

2. Imposition of constructive trust on all money, property in the name of Allison, and Chong Kwan Tan, including the property at 4048 Ingram Drive, Janesville, WI 53546 and 655 Island Place, Redwood City, CA 64065;

3. Tracing and equitable lien on 4048 Ingram Drive Janesville, WI 53546 and 655 Island Place, Redwood City, CA 94065 and 4048 Ingram Drive, Janesville, WI 53546. Compel conveyance(s) to plaintiff the property located at 4048 Ingram Drive, Janesville WI 53546 and the property located at 655 Island Place, Redwood City, CA 64065.

4. Removal of Allison as the co-executrix and in her place appoint the Plaintiff;

5. The sum of $ 1,451,370.70 against Allison and CK jointly and severally;

6. Damages, jointly and severally by the defendants;

7.Punitive damages;

8.Interests;

9. Costs;

10.Such further and any relief as the Court deems

18.  On or about 8/4/2021 or earlier, aided and abetted by GCT, TSL, KPK, TCL, JT, GJH, TSC (hereinafter together referred to as "SG defendants") and all the defendants acting in conspiracy for financial gains, Mr. Cummins committed fraud upon Court and abuse of process in the Ex Parte Application hearing held on 4/26/2022.

<u>Particulars of fraud and extrinsic fraud in 2021 case</u>

a.  On 4/25/2022, Allison and CK attorneys' law firm, Messrs Barulich, Doogoni & Suttmann, of 577 Airport Boulevard, Suite 400, Burlingame, CA 94010, through its paralegal Katie Gross sent an email to plaintiff as pro se plaintiff indicating that the attorneys will apply for Ex Parte application the next day, at about 1.30 p.m. 4/26/2022 at to be held at Dept 1. to dismiss the case.

- 5 –
COMPLAIN

b. However, on 4/26/2022, the motion was heard at Dept 21, Superior Court of California, San Mateo County, and not Dept 1 and the attorneys James Cummins concealed the fact that Plaintiff had earlier filed Application for leave as a Vexatious Litigant on the 4/19/2022, thus complied with the Order of Judge dated 4/11/2022, i.e. within 10 days of the Order dated 4/11/2022.

c. The concealment and misrepresentation misled the Judge to enter Order to dismiss the case, without prejudice, on 4/26/2022, in the absence of plaintiff.

d. And subsequently, the deputy clerks of Court took the Plaintiff's Motion For Reconsideration off calendar.

e. The above is extrinsic fraud, fraud on Court, concealment, and abuse of process, as aided by abetted by the other defendants and as a result of conspiracy.

f. Subsequently plaintiff filed motions, including motion to set aside, but they were not e-filed and the motions papers sent via mail, even when marked "Private and Confidential" addressed to the Judge, were returned to plaintiff un-filed, by the Deputy clerks.

g. Notice of appeal by Plaintiff against the Judgment entered on 4/26/2022 has a deadline of 10/25/2022. No notice of appeal has been filed as the appeal process takes too much time and it means that plaintiff has to litigate again in the State Court.

According to a case, the attorney in Drum case was found liable in individual capacity for abuse of process: *Yee v Superior Court.*

IN RELATION TO GCT, CONTEXT OF VICIOUS CONDUCT OF DEFENDANT GCT

19.     Plaintiff was employed on or about March 1991 after plaintiff was admitted to the Singapore Bar and worked for "Lee Kai" group of companies owned by the Hong Kong couples, which was run by Madam Ching Mun Fong. At that time, the employer had an appeal pending in the Court of Appeal.

20.     Madam Ching Mun Fong knew about the argument to win the appeal to get the whole liquidated damages claimed for late completion of construction of the building. They had bought a few floors of office units in the building. Plaintiff was then the employee with the job-title of "legal advisor" although plaintiff was a new law school graduate, newly admitted to the Singapore on 3/23/1991. Madam Ching was willing to forgo the claim for part of the liquidated damages. She indeed ended up losing the amount claimed for liquidated damages on appeal, but won big by making the judgment rendered looks hopelessly flawed.

- 6 –
COMPLAIN

21.     The motive of GCT is to inflict severe financial, social, and emotional injury to plaintiff. The conduct of interfering with family inheritance to prevent plaintiff from getting the rightful share in the 2021 case, is unheard of. Also unheard of is the foolish decision of the Court of Appeal in which GCT was involved in, in the Lee Kai case.

A summary of the context and event of the appeal in Singapore Lee Kai case is as follows:

22.     Defendant GCT has been prosecuting plaintiff maliciously because of his historical unprecedented foolish conduct in Singapore involving the case of Lee Kai Corporation (Pte) Ltd v Chong Gay Theatres Ltd [1992] 2 SLR 689; [1992] SGCA 55 Suit No:  CA 53/1989 Decision Date: 02 Sep 1992 Court: Court of Appeal (hereinafter "Lee Kai").

The Judge of Appeal who decided the appeal, LP Thean, was appointed by GCT. GCT sought to dismiss the appeal and made a foolish judgment. GCT sought to dismiss the appeal as the agreement was drafted by late Judge Lai Kew Chai, with supplemental agreements by other lawyers.  Late Judge Lai Kew Chai was appointed by late Mr. Lee Kuan Yew to the High Court bench. Judge Lai is a third class Honor law graduate. In the British tradition, that is the lowest class of degree with Honor. Late Judge Lai was from the law firm Messrs Lee & Lee, a law firm founded by late Mr Lee Kuan Yew and his late wife, late Madam Kwa Geok Choo. It was Judge Lai who drafted the sale and purchase agreement, and subsequently, supplemental agreements were signed, but no changes were made to the phrase.

23.     The judgement delivered did not mention the names of lawyers who drafted the agreements and the supplemental agreements, but GCT had information about the identity of the drafters.

The appeal centered around the construction of the sale and purchase agreements of several floors of a building, and in particular, the phrase "Certificate of Fitness (whether temporary or

permanent)".   LP Thean held that the phrase means Temporary Occupying License (TOL), not Certificate of Fitness (COF), accepting the argument that the phrase means either TOL or COF, and the developer's duty is discharged when the TOL was issued, not the later-issued COF.  A short answer to that is one document and not two documents are required. It is a judgment of unimaginable stupid magnitude. GCT had tried to snub the late Mr. Lee Kuan Yew and it backfired.

24.     GCT seized the opportunity trying to snub the late Mr Lee Kuan Yew and Mr Lee Hsien Loong. The timing is crucial. Late Mr Lee Kuan Yew was about to relinquish the role as the Prime Minister of Singapore and GCT wanted to be the next Prime Minister. GCT was widely known as a "seat-warmer". GCT "seized" on the appellate case trying to demonstrate that his rival for the post of Prime Minister, Mr Lee Hsien Loong, just like Judge Lai , has no merits and late Mr Lee Kuan Yew was not impartial and favored his own "people". GCT made a tremendously "stupid" decision, in collusion with LP Thean, whom he appointed to the Court of appeal.

After the stupid judgment was rendered, GCT found out that plaintiff was employed by Lee Kai and he went on decades long of "revenge" for his stupid decision.

Because Madam Ching and the late Mr Lee Kuan Yew's family knew and plaintiff also knew it was "two", instead of a "one" which was what, in effect, decided by LP Thean,

25.     The lawyers for Chong Gay had argued that the phrase should be interpreted as "either", so the moment the first document is obtained by Chong Gay, they discharged their duty to procure the satisfactory documents. The stupid GCT thought "either" and "whether" are the same.

- 8 –
COMPLAIN

26.    Plaintiff had knowledge because Madam Ching had paid the sum of $10,000 British pounds to Mr. David Gray, QC to write a report/opinion or as a consultation fees. Madam Ching also informed Plaintiff that Mr Jimmy Yap, who argued the appeal, was her former employee. She said the agreement was drafted by Judge Lai before he became a judge. The statement of claim in the lawsuit, claiming interest for late completion, which is equivalent to the Complaint in this Court, was signed by Judge Lai, on the law firm Messrs Lee & Lee, Court papers. The statement of claim claims a fixed sum of money, the amount of liquidated damages. There were two other lawsuits that were consolidated for hearing.  If plaintiff remembers correctly, the back of the Court paper is the page with the name of the law firm.

27.    In the Court of Appeal, the panel of three judges were at the hearing, but it was the practice for one judge to ask questions. On this instance, it was LP Thean. It was rumored that LP Thean was a better lawyer than the late Mr. Lee Kuan Yew, but it turned out that it was just a rumor.

Also, it was widely known in the legal circle that a good lawyer should be able to defend the agreement that he drafted in the Court.

28.    That was what GCT sought to do, to prove that Judge Lai was a bad lawyer with a third class honor law degree and the late Mr. Lee Kuan Yew was not fair to appoint him from his own law firm to be a High Court Judge and Mr Lee Hsien Loong has no merits to be the Prime Minister of Singapore. The late Mr Lee Kuan Yew is widely known for laying the foundation for establishing excellent government by emphasizing meritocracy and no corruption. GCT has launched an assault but ultimately failed and backfired.

29.    Since the judgment was delivered, GCT harbored tremendous amount of hatred and anger towards plaintiff as plaintiff kept quiet about the argument that was obvious. Madam Ching had

informed Plaintiff that the family members of late Mr Lee Kuan Yew and others all knew about it while the appeal was pending.

30.     So when the news broke that the judgment was stupid as delivered on September 1992, GCT started swiftly to look for plaintiff to take what he irrationally perceived as a revenge. GCT , with his webs of contacts and ability to pull strings, got hold of Plaintiff's close friend, Tng Soon Chye. GCT hired a hitman, got hold of Tng Soon Chye (TSC) to make phone call to Plaintiff and got hold of plaintiff to meet Tng Soon Chye on a Sunday afternoon in the law library. Plaintiff was ambushed there at outside the law library of National University of Singapore in the toilet. The incident took place immediately after the judgment was rendered in September 1992. GCT had just started on his decades long journey to persecute plaintiff and injure plaintiff, with the help of TCL, JT, GJH and TSC and later joint by TSL and KPK.

31.     In 1996 in Milwaukee, Wisconsin, USA,  defendant Griffiths stated that he would hand out a take home exams, and the take home exams is  not going to be the same. He initially stated the total points is 20. Later, he changed it to 15. He finally graded plaintiff 5/15.  It was because, one had been added to GCT's number "4" to make it 5. GCT got Griffiths to grade plaintiff 5/15, and when simplified, it is 1/3, signifying  that plaintiff got a "1" and a "3". Griffiths indeed handed a take home exams regarding a hypothetical company having cash flow problem, being unable to pay employees' salary on time. Together with the description of the company's financial statements, there was a description of bankruptcy process.  The company was laden with huge debts and having debt/equity ratio that was large. The course is financial strategy and it was indeed not the same as any topics covered in class before.

32.     He graded Plaintiff 5/15 . When simplified, it is 1/3. Griffiths stated initially that the total score was 20, but later he said he changed it to 15. Griffiths stated that Plaintiff should see an international student advisor. Plaintiff has spent first semester there, and that was the second semester . Plaintiff had another class, Investment, with him. And he similarly included numerous

questions on the mid-term, most of which were not similar in the text and required other concepts to solve the problem. He also failed Plaintiff for the exam, on the course "Investment". He never disclosed how the others performed in the Investment class. But for the 5/15, he announced in class that the lowest is 5 and the highest is 12, he handed out the answer scripts in the order of the highest score, from the highest to the lowest score. Plaintiff being the last person to get back the answer script and the grade. He was determined to humiliate and cut short plaintiff's study. In 1997, Plaintiff filed a case, Case No 97-CV-0331, in United States District Court, Maryland, against among others, Mark Griffiths.

33.    In plaintiff 's experience, never, never, had a so-called self-aggrandized instructor distributed answer sheets in this manner. Most will place the answer sheet on the student's table, with the score not facing up, to avoid embarrassing the students. Or just call out names in random. But Griffiths is a sore scum-bag. The tuition fees for one semester of graduate program, MS, Financial Analysis then was about $5000.00 plus. After one year of study, spending the tuition fees and living expenses, and rents, plaintiff was not able to continue the program, losing more than $24,000.00. Griffiths was acting in conspiracy with GCT.

34.    With the dismissal, plaintiff left for Australia since plaintiff was not in good academic standing and was unable to stay and continue in US colleges, universities.

The loss includes the inability to graduate and get a job. Plaintiff would have graduated by 1996 September or later.  The loss of income is 9/1996 to 12/2009, 14 years 3 months.

14 1/4 x 83660 =                                                  $1,192,156.00

*Financial Analysts made a median salary of $83,660 in 2020. The best-paid 25 percent made $112,460 that year, while the lowest-paid 25 percent made $63,670.

(https://money.usnews.com/careers/best-jobs/financial-analyst/salary)

- 11 –
COMPLAIN

35.     There were other events involving GCT's persecution of plaintiff, in Sydney, Australia in 1997, in Hayward, California, from 1998 to 2001 and in Dubuque in 2006/2007. There were other events in Los Angeles, Case No.SC112269, where Hacker was aided and abetted and engaged in conspiracy with GCT for financial gain, which could be attributed to as persecution by GCT.

36.     GCT was remarked as a "wood" and GCT took tremendous offense. While plaintiff was at University of Dubuque, nursing school in 2005 to 2007, Dean of the Nursing School, Dr Kathy Dolter, instigated by GCT,   "ordered" plaintiff to get "speech course" at the library. Plaintiff had graduated from Bachelor degree at California State University-Hayward and had taken public speech class. That was the abuse hurled by GCT.

37.     On or about 2011, SG defendants bribed Ronald Hacker in SC112269 in Superior Court, Los Angeles County.

38.     The number 12 appeared later in Illinois, and the number 30 appeared in documents filed by James Cummins, attorney for the defendants, in the demurrer and the Ex Parte motion filed on 4/26/2022.

39.     SG defendants were involved in the earlier case SC112269, filed in the Superior Court, County of Los Angeles by Plaintiff. The allegation of having filed **12** cases by attorney Dibaei in the motion to deem plaintiff a Vexatious Litigant. Attorney Dibaei repeatedly mentioned the number 12.
The number 12 and 30 also appeared in a case in Illinois, Case No 12CR18264.

The number "3" and 4 and "30"

40.     GCT then used fraudulent means to falsely accuse plaintiff with 3 (three) accusations and sentenced fraudulently an associate of Prime Minister of Singapore, Mr. Lee Hsien Loong to 4

(four) years. With his agenda to persecute plaintiff, GCT went on to take a series of actions in the United States and elsewhere.

And GCT, GJH, TSC defendants sought again to falsely accuse plaintiff in Case No. 12CR18264 and resulted in 30 months.

The other number is 12

41.     LP Thean, in his judgment stated that if the drafter of the agreement had wanted to make it permanent, the drafter could have added the word "permanent" before the phrase. The adding of 1 before the number 2, to make it 12, is what exactly happened in 12CR18264. GCT, TSL, KPK, TCL, JT, GJH,  instigated police officers to commit perjury by falsely stating that they, the police, saw plaintiff with 12 bottles inside the apartment.  GCT, TSL, KPK has been illegally persecuting plaintiff at various locations, involving various different, diverse individuals and unlawfully. With GCT, TSL, KPK, TCL, JT, GJH  at the hub, using their contacts , including TSC and influence,  defendants engaged in conspiracy in Circuit Court of Cook County, Criminal Case No. 12CR18264, prosecuted in September/October 2012.

Repeated incidents:

42. The numbers **12 , 15** was stated by Alexander Haas, letter of UC Berkeley, California Law Review ("CLR"), a copy is attached and exhibited as **Exhibit B** , was repeated in the prosecution in Case no. 12CR18264, is transcripts of grand jury proceedings**.** And by Dibaei in the motions and Ronald Hacker in Case No. SC112269 filed on April 2011 in Superior Court of California, Los Angeles County by Plaintiff .

43. The numbers 12, **15** was stated by Mark Griffiths, repeated by Alexander Haas.

Also, the severity of 30 months sentence, which is not proportionate for plaintiff who is a first time offender, with no criminal conviction records, is highly excessive and indicative of bad faith and calls for explanation and investigation. Plaintiff has not been able to find unreported cases or

- 13 –
COMPLAIN

reported cases as precedent, and discovery by way of interrogatory or otherwise could reveal if but Judge Alonso has in mind any precedent for sentencing 30 months, deviated from his earlier "probationable" statement.

44. The Prison Review Board, on 10/9/2013 imposed wearing of Electronic monitoring device on plaintiff for 120 days as a condition for parole, i.e. when plaintiff went on parole upon release. The prison review board has no authority, as the authority, if any, lies with the Department of Correction's Director. This is another instance of "12" plus a zero : "120".

Such is the blatant abusive, despicable conduct of GCT.

45.     Plaintiff sent articles to Stanford Law Review ("SLR")  and California Law Review ("CLR"), a note about the Lee Lai case. Editors for SLR , in the letter, copy attached and exhibited as **Exhibit A**,  and CLR , in the letter , copy attached and exhibited as **Exhibit B**, responded.

The SLR letter:

The  ", " (comma) is not what the plaintiff stated as the title of the article. A comma in English grammar mean is not the end. It is analogous to temporary. It is not what plaintiff stated as the title.

The CLR letter: (UC Berkeley)

"No name founded" is not what the plaintiff stated as the title of the article.

The significance:

The phrase "No name founded" , is a lie. "Name" refers to the person who drafted the agreement did not write the name for the document(s). It was referring to  late Judge Lai Kew Chai and more directly was referring to the late Mr. Lee Kuan Yew who was the founding father of Singapore.

- 14 –
COMPLAIN

The 1200 refers to the 12 plus 00. The 1500 is 15 plus 00. 15 is what Mark Griffiths graded plaintiff in University of Wisconsin-Milwaukee.

46. The numbers are not coincidental and the lie that  the title of the article as "No name founded" is also not coincidental. The consistent use of the numbers is evidence of conspiracy, unity of action; even after so many years. The 12, 15 was in 1996, what Mark Griffiths graded plaintiff. The letters of CLR and SLR are in 2001. The case 97-cv-0331 is now available after plaintiff made enquiry.

47. The number 12 first mentioned in 1996 by Griffiths, in 2000 in the CLR letter is the same number as the 12 bottles in the grand jury indictment perjury. This letter from CLR and grand jury indictment repeated the number 12. Then in 2011 by Dibaei and Hacker, in Los Angeles. In 2012 by Mills in Chicago. 30 first mentioned in Chicago, later by Cummins in San Mateo, California.

In the 2021 case, the concealment by the Attorney Cummins is fraud/extrinsic fraud.

<u>Allegations of Punitive Damages where Applicable</u>

The aforementioned conduct of Defendants was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was extreme conduct carried on with a willful and conscious disregard of the rights of Plaintiff, that subjected Plaintiff  to cruel and unjust hardship in conscious disregard of his rights; and that said conduct was used by Defendants to deprive Plaintiff of his legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendants, and each of them, and designed to punish and deter similar conduct. Further, Defendant GCT has repeated his oppressive, fraudulent, and malicious actions and punitive damage is justified to deter him from committing the same actions.

FIRST CAUSE OF ACTION
FRAUD ON COURT
(AGAINST CUMMINS)

- 15 –
COMPLAIN

48.     Plaintiff refers to and incorporates by reference all prior paragraphs.

49.     Defendant Cummins committed fraud/extrinsic fraud on Court. Fraud/extrinsic fraud on the 4/26/2022 ex parte proceedings is perpetrated by an officer of the court, Defendant Cummins, such that the court cannot perform its function as a neutral arbiter of justice.

50.     As a proximate result of conduct of Defendant Cummins, Plaintiff suffers loss, damages and mental sufferings. The loss and damage, including the sum of the loss of lawsuit in 2021 case, the causes of action pleaded :

conversion, $1,457,370.70,

breach of fiduciary duty: $1,457,370.70,

Fraud : $1,457,370.70, Mental suffering due to fraud: $1,300,000.00,

Conspiracy: Allison: $1,457,370.70, ck: $1,457,370.70,

accounting, : sum uncertain

unjust enrichment: $1,457,370.70,

punitive damages : Allison, $350,000.00, $300,000.00 CK

conveyance of 655 island place, loss due to non-conveyance: loss that could have accrued by conveyance due to increase in valuation and price : an increase of $2,100,000.00 @35%=$735,000.00

4048 ingram drive.  =$100,000.10

loss of :$11,529,224.30

Cost and disbursements of 2021 case:

Filing fees : $435.00

Fedex:106.06.

Postage: 360.00

Miscellaneous:  printing, ink, papers etc : $560.10

Interests on $11,529,224.30 @ 6.9% from 8/2021 to 4/2022: 9 months =$596,311.33

- 16 –
COMPLAIN

Total :                                                      =$12,120,696.69

51.    Plaintiff suffered mental sufferings, including anguish, humiliations, distress, anxiety, fright, depression, grief, or trauma.

52.    As a proximate result of the conduct by the defendant, plaintiff suffers loss and damage, and mental suffering, including the sum of =$12,120,696.69

SECOND CAUSE OF ACTION
ABUSE OF PROCESS
(AGAINST CUMMINS)

53.    Plaintiff refers to and incorporates by reference all prior paragraphs.

54.    The defendants entertained an ulterior motive in using the process of Ex Parte Application on 4/25/2022, 4/26/2022 and the subsequent events, continuing concealments to deny Plaintiff's claim for his share of inheritance. That the defendants filed Ex Parte Motion To Dismiss.

56.    The defendants intentionally used this legal procedure to deny Plaintiff's share of inheritance. The defendants committed a wilful act in a wrongful manner.

57.    The defendants' conduct was a substantial factor in causing plaintiff's harm.

58.  As a proximate results of the conducts of defendants herein, plaintiff has suffered loss and damages and mental suffering. Plaintiff was harmed.

Particular of loss and damage

(a) Costs and time spent in litigating the lawsuit Case No. 21-civ-04197.

(b) Total loss of the lawsuit and the claim, i.e. the sum of all six causes of action plus punitive damages, pre and post-judgment interests, from 8/3/2021 to 4/26/2022 and thereafter until payment and other relief.

- 17 –
COMPLAIN

(c)  Mental suffering.

=$12,120,696.69

### THIRD CAUSE OF ACTION
### CONSPIRACY TO COMMIT FRAUD ON COURT
### (AGAINST ALL DEFENDANTS)

59.    Plaintiff refers to and incorporates by reference all prior paragraphs.

60.    Defendants committed the fraud on Court.

61.    The actions constituted extrinsic fraud.

62.    Defendant Cummins fraudulently induced Plaintiff to fail to appear at the ex parte hearing. As described above, at all times relevant to this charge. the defendants acted in agreement and in conspiracy to commit fraud on Court.

63.    There exists, among all the defendants, a combination of two or more persons.

64.    All the defendants owed a duty or acted in conspiracy for financial gains.

65.    All the defendants possess the purpose, plan, agreement, of accomplishing either an unlawful purpose or a lawful purpose by unlawful means to commit fraud on Court.

66.    The defendants have acted in concert. There were overt tortious or unlawful act to further the plan and each of the co-conspirators is liable.

67.  It is not necessary that the co-conspirators should have joined the conspiracy at the time of its inception; everyone who enters into such a common design is in law a party to every  act previously or subsequently done by any of the others in pursuance of it.'  Co-conspirators are liable for action of GCT, TSL, KPK, TCL, JT, GJH, TSC in Illinois, California.  *(De Vries v . Brumback* (1960) 53  Cal.2d 643, 648 [2  Cal. Rptr. 764, 349 P.2d 532]

- 18 –
COMPLAIN

68.     Plaintiff acted in justifiable reliance on the representations by all the defendants involved. The Judge relied on the misrepresentation and concealment, entered judgment dismissing the case, without prejudice.

69. .    As a direct and proximate result of the Defendants' actions and conducts, herein Mentioned, Plaintiff has suffered loss and damage, and mental sufferings. The loss and damage include the sum of $12,120,696.69.

70.     Each participant in the wrongful act is responsible as a joint tortfeasor for all ensuing damages, regardless of whether that conspirator was a direct actor and regardless of the degree of his or her activity. Each conspirator liable as a joint tortfeasor "whether or not he actually committed the wrongful act." ( Barney v. Aetna Casualty & Surety Co. (1986) 185 Cal.App.3d 966, 983 [230 Cal. Rptr. 215]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 44, p. 107.)

FOURTH CAUSE OF ACTION
CONSPIRACY TO COMMIT ABUSE OF PROCESS
(AGAINST ALL DEFENDANTS)

71.     Plaintiff refers to and incorporates by reference all prior paragraphs.

72.     As described above, at all times relevant to this charge. the defendants acted in agreement and in conspiracy to abuse process.

73.     There exists, among all the defendants, a combination of two or more persons.

74.     All the defendants owed a duty or acted in conspiracy for financial gains.

75.     All the defendants possess the purpose, plan, agreement, of accomplishing either an unlawful purpose or a lawful purpose by unlawful means to abuse process. Defendant Cummins fraudulently induced Plaintiff to fail to appear at the ex parte hearing.

76.     The defendants have acted in concert. There were overt tortious or unlawful act to further the plan and each of the co-conspirators is liable.

- 19 –
COMPLAIN

77.    It is not necessary that the co-conspirators should have joined the conspiracy at the time of its inception; everyone who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it.'  Co-conspirators are liable for action of GCT, TSL, KPK, TCL, JT, GJH, TSC in Illinois, California.  *(De Vries v . Brumback* (1960) 53  Cal.2d 643, 648 [2  Cal. Rptr. 764, 349 P.2d 532]

78.    As a direct and proximate result of the Defendants' actions and conducts, herein mentioned Plaintiff has suffered loss and damage and mental sufferings. The loss and damage include the sum of ,  US$12,120,696.69.

79.    Each participant in the wrongful act is responsible as a joint tortfeasor for all ensuing damages, regardless of whether that conspirator was a direct actor and regardless of the degree of his or her activity. Each conspirator liable as a joint tortfeasor "whether or not he actually committed the wrongful act." ( Barney v. Aetna Casualty & Surety Co. (1986) 185 Cal.App.3d 966, 983 [230 Cal. Rptr. 215]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 44, p. 107.)

FIFTH CAUSE OF ACTION
AIDING AND ABETTING, FRAUD ON COURT
(AGAINST SG DEFENDANTS)

80.    Plaintiff refers to and incorporates by reference all prior paragraphs.

81.    SG Defendants  knew that fraud on Court was being committed by Defendant Cummins.

82.    That SG Defendants, gave substantial assistance or encouragement to Defendant Cummins in relation to fraud on Court.

83.    That SG Defendants' conduct was a substantial factor in causing harm to plaintiff.

- 20 –
COMPLAIN

84.   SG Defendants are liable for aiding and abetting Defendant Cummins in the commission of fraud on Court.

85.   SG Defendants have actual knowledge of fraud on Court and gave substantial assistance to Defendant Cummins in the commission of fraud on Court.

86.   SG's conduct was a substantial factor in causing harm to plaintiff." *American Master Lease LLC v. Idanta Partners, Ltd* (2014) 225 Cal.App.4th 1451, 1478.

87.   As a result of the aiding and abetting, plaintiff suffers loss and damage, including the loss of the lawsuit in 2021 case and mental suffering, loss of reputation. $12,120,696.69

SIXTH CAUSE OF ACTION
AIDING AND ABETTING, ABUSE OF PROCESS
(AGAINST SG DEFENDANTS)

88   Plaintiff refers to and incorporates by reference all prior paragraphs.

89.   SG Defendants  knew that abuse of process was being committed by defendant Cummins.

90.   That SG Defendants, gave substantial assistance or encouragement to Defendant Cummins  in relation to abuse of process.

91.   That SG Defendants' conduct was a substantial factor in causing harm to plaintiff.

92.   SG Defendants have actual knowledge of abuse of process and gave substantial assistance Cummins in the abuse of process.

93.   SG Defendants' conduct was a substantial factor in causing harm to plaintiff." *American Master Lease LLC v. Idanta Partners, Ltd* (2014) 225 Cal.App.4th 1451, 1478.

- 21 –
COMPLAIN

94.     As a result of the aiding and abetting, plaintiff suffers loss and damage, including the loss of the lawsuit in 2021 case and mental suffering, l. $12,120,696.69

### SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

95.     Plaintiff refers to and incorporates by reference all prior paragraphs and all paragraphs herein.

96.     It is established that the objects and purposes to which the conspirators have agreed may be inferred from all the surrounding circumstances including the nature of the tortious acts and the relationship and interests of the parties. (Wyatt v. Union Mortgage Co., supra, 24 Cal.3d at p. 785; Chicago Title Ins. Co. v. Great Western Financial Corp. (1968) 69 Cal.2d 305, 316 [70 Cal. Rptr. 849, 444 P.2d 481].) As described above, at all times relevant to this charge, the defendants' conduct was extreme and outrageous. There was conspiracy to inflict intentional emotional distress and the conspiracy is continuing.

97.     The conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency.

98.     The defendants did not reasonably believe that their objectives were legitimate and the defendants were aware that the Plaintiff was particularly susceptible to emotional distress.

99.     The defendants intended to cause, or recklessly or consciously disregarded the probability of causing, the plaintiff to suffer emotional distress. The defendants were certain, or were substantially certain, that their conduct will cause emotional distress.

100.    Plaintiff suffered severe or extreme emotional distress, including fright, horror, grief, worry, shame, and humiliation.

101.    No reasonable person could be expected to endure it.

102.    As a direct and proximate result of the Defendants' actions and conducts, herein mentioned, Plaintiff has suffered loss and damage, mental anguish and severe emotional distress,

manifested in humiliation, embarrassment, anger, chagrin, disappointment or worry, shock, headaches, anxiety, nervousness, and indignity, and is entitled to actual damages.

WHEREFORE Plaintiff prays this Court for the grant of the following relief, for each cause of action, against the defendants, jointly and severally, where applicable:

1.      General compensatory damages in an amount to be determined at trial.

2.      Punitive damages in an amount to be determined at trial.

3.      Interests.

4.      For the costs and disbursements of this action.

5.      Such further and any relief as the Court deems fit and proper.

Dated :  9/28/2022

------------------------------------------

Khor Chin Lim, Pro Se Plaintiff

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

### DECLARATION UNDER PENALTY OF PERJURY

I, Khor Chin Lim, resident of State of Wisconsin, hereby declare under penalty of perjury pursuant to 28 U.S. Code § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 9/28/2022 at Janesville, Wisconsin.

------------------------------------------

Khor Chin Lim, Pro Se Plaintiff

- 23 –

COMPLAIN

Exhibit A



STANFORD LAW SCHOOL

**Stanford Law Review**

Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610

http://lawreview.stanford.edu
*President,* Tel. 650.723.3210
*Managing Editors,* Tel. 650.725.0181
Tel. 650.724.6259
Fax 650.723.9640
*Articles Department,* Tel. 650.723.4190
*Journal Business Manager,* Tel. 650.725.0183
Fax 650.723.0202

November 9, 2001

Mr. Khor Lim
1901 Harder Road #312
Hayward, CA  94542

Dear Mr. Lim,

Thank you for submitting your article, "," to the *Stanford Law Review*.  However, after careful consideration, we regret to inform you that we are unable to publish your piece.

As you might be aware, the *Stanford Law Review* receives several thousand submissions every year; we must therefore decline many excellent articles.  We appreciate having had the opportunity to consider your article and thank you for considering our journal for publication. We look forward to seeing your future work.

Best Regards,

Articles Editors
*Stanford Law Review*
Volume 54

Exhibit B

# UNIVERSITY OF CALIFORNIA, BERKELEY

BERKELEY • DAVIS • IRVINE • LOS ANGELES • MERCED • RIVERSIDE • SAN DIEGO • SAN FRANCISCO  SANTA BARBARA • SANTA CRUZ

CALIFORNIA LAW REVIEW
*A California Non-Profit Corporation*
SCHOOL OF LAW
BERKELEY, CALIFORNIA 94720
(510) 642-7562
Fax: (510) 642-3476
californialawreview@law.berkeley.edu

11/12/2001

Mr. Khor Lim
1901 Harder Road #312
Hayward, CA 94542

Dear Mr. Lim:

Thank you for submitting your piece, <u>No name founded</u>, to the *California Law Review*. We were pleased to have the opportunity to read it. Unfortunately, we will not be able to publish the piece this year.

As you may know, we receive 1200 to 1500 submissions each year, of which we publish perhaps 12. Accordingly, we are unable to accept many pieces, like your own, that break new ground or offer particularly compelling insights into legal questions.

Again, please accept our thanks for your interest in *CLR*. We look forward to reading more of your work in the future.

Sincerely,

Alexander Haas
Senior Articles Editor